What happened to your argument in our second case? Maybe you just be sure and identify yourself and for whom you, who you represent. Thank you, your honor. May it please the court, I'm Erin Trodden representing Angel Vasquez Flores, the defendant in this case. In this case we agree with the government on many points. The government conceded that Mr. Vasquez Flores has met or is excused from meeting the first two requirements of a collateral attack under 8 U.S.C. 1326d regarding exhaustion of administrative remedies and judicial review because the immigration judge in his removal hearing never advised him of his right to appeal the IJ's decision. Tell us what you disagree with the government about. We disagree with the government as to prejudice, your honor. The government contends that Mr. Vasquez Flores was not prejudiced and in fact he was prejudiced by the immigration judge's errors. The denial of his right to appeal prejudiced him because had he been able to appeal, the outcome of this case would have been different and he's shown a reasonable probability that he would have been eligible for voluntary departure. But did he have the means, counsel, did he testify? Your honor, he testified at the hearing that he did have resources available. The beginning of the hearing the court will have noted that the immigration judge, after going back and forth regarding removability, ordered him to pay a $5,000 bond and he said it will have to be less. I don't have any money here and the immigration judge then said it's not going to be less. Can you pay for your ticket? No, he didn't even ask him if he could pay. He asked if his girlfriend or someone else could pay for a ticket and after a long pause he said no. Later on he again asked if the bonds could be lowered and the immigration judge said it's not going to be lower and in fact now that I've ordered you deported you don't have a bond at all. Yes, but does he ever represent that he had the means to depart if the bond was lowered? Does he ever represent that? He never does. He was never given the opportunity to. That condition was never presented to him. He asked for the bond to be lowered and the immigration judge told him it's not going to be lower. Now can someone pay for a ticket for you? Now the way a reasonable person would interpret that would be to mean you'll have to pay five thousand dollars. Now can you also pay for a ticket? Well maybe that's the way you interpret it but I'm not so sure that's necessarily the way that a reasonable person would respond. You might say look I can come up with x amount and I can depart for that reason. Your honor, I think there's there let me unpack that question because I think there's there's several issues going on there. He never understood I don't think what exactly was being asked or why this was important and I think this gets to the immigration judge's duty to develop the record as it relates to him. So the immigration judge never explained to him how voluntary departure works including that he would have a period of time to depart that he wouldn't have to pay for his ticket within 24 hours or the next week but that he could have up to 60 days to depart. Well all of this all of this all of this would would turn on on how we would view the term reasonable probability. I know we talked about it in this court in the state versus United States versus Wilson but I don't think we've ever fully articulated what that term means. How do you view what is your definition in terms of how this court has decisions got us to the definition of what we mean by reasonable probability? Thank you your honor. Reasonable probability has to mean something less than a certainty for sure and it has to mean something less than clear and convincing evidence. So we argued clear and convincing evidence but that's the standard that he would have had to show in immigration court. Where's your case law what cases are you looking at that guide you on that? So I'm looking particularly at El Shami which is this court's decision where the court found that he the defendant was prejudiced. In El Shami the court looked at it found that there was a reasonable probability that but for the immigration he would not have been removed. And the court looked at the positive and the negative factors and basically said he has some positive factors. He had these are this is a balancing test  he has some positive factors. He has a family in this country. He has a small business. He has been here a long time but he has some significant negative factors too. He had two serious felony convictions. The court looked at that and found that under those circumstances he had showed a reasonable probability. I think we can deduce from that that this is not a high verdict. The cases where courts have found that there wasn't a probability are cases where very clearly the alien would not have been eligible. Can you speak up a little bit it seems like your voice is fading. Somewhere in there you faded on us. I'm so sorry can you hear me now? That's better. Okay so I was I was saying that the given El Shami's balancing of factors and basically saying there are some positive factors but there are some negative factors as well. This is not a particularly high verdict. The counter example would be a case like Lopez Collazo which is another decision of this where the court determined that the defendant had not shown a reasonable probability of success because he was plainly ineligible for the relief he was seeking. Basically even though he had showed a due process violation he was still an aggravated felon and he just plainly under those circumstances he did not show the reasonable probability. Here we have a situation where Mr. Vasquez-Flores there's no dispute that he qualifies under almost all of the factors for the only real issue is whether or not he had the means to depart on his own and his testimony is that he does have he does have means he does have some funds. Now the problem is the immigration judge never pursued that. The immigration judge never asks him the obvious follow-up question what do you have and the immigration judge also erroneously conditioned his his ability to depart voluntarily on his ability to pay this departure bond which under the matter of MAS decision which was submitted in the 28-J letter would have been incorrect. The requirement I'm sorry I can't hear you again I don't know if the microphone is closed or what the story is. I'll lean in as much as I can your honor I apologize. The matter of of MAS decision which was submitted as the 28-J letter noted that it's when an alien is granted voluntary departure under safeguards there is no requirement for a bond to be posted at all. So the immigration judge's decision here to condition the bond on the to condition the grant of voluntary departure on posting a departure bond was error. Had he been able to appeal the BIA would have recognized that and the case would have been remanded. Now we get to the difference here he only has to show as Judge Wynn noted a reasonable probability of success so he showed that he's otherwise eligible he showed that he has funds under those circumstances he shows a reasonable probability of success. The difficulty is. I want to be clear it's not so much me noting it I'm simply going on a case law from you know United States versus Wilson that seems to be some that we've kind of gone with that standard for these 1326 D claims. What I was trying to ask you was you know in in terms of a tick spill maybe flesh out what does that term actually mean when we're trying to determine prejudice and where do we look. I know that case cited a Fifth Circuit case as a basis for it and and you know that's because to me that's fundamental to know what that term means or at least to help us to define it can help us to at least I think make a decision in this case one way or the other. Absolutely your honor and the the Wilson case I think and I'm not I'm not aware of any cases in the Fourth Circuit that have specifically defined reasonable probability but I will note that cases in other circuits and I'm thinking of the Ninth Circuit in particular have recognized that a reasonable probability requires at least some evidence and I don't recall which of the Ninth Circuit cases cited in the briefing said this but it was discussed that at least some evidence was required. So if reasonable probability means some evidence then we get there. Certainly he has showed some evidence. Reasonable probability I don't think requires though that he show to this court what he would have had to show to the immigration court. But does it require that he makes some sort of representation? You keep saying he's established all of these things and if you have just if you have a statute and you have four elements to establish you establish three you haven't established a reasonable probability that you have complied with the statute have you? No because the fourth one's missing that's what I'm we're trying to tease out from you. Yes your honor and and with respect to that what we have in the record is his statement to the immigration judge that he had some resources. So he said the bond would have to be less. We don't know you know he did not say that he could pay five hundred dollars or a thousand dollars or twenty five hundred dollars. The immigration judge also didn't ask him that and when he tried to offer that he could pay less the immigration judge said it's not going to be less. But given that statement twice that he could say something I think he has shown at least that he has the resources he's he's shown a reasonable probability that he had the resources to depart voluntarily and that's all he needs to show. Had the immigration judge developed the the record then the issue would have been different and I the immigration judge's duty to develop the record in this case is I want to be clear goes to the prejudice aspect of the case for him. But with respect to the questions that the court previously asked in the in the prior case our position is that that an immigration judge duty to develop the record is one that springs from due process. Ms. Triden let me ask you this question. How long was this hearing? Seven and a half minutes your honor. Okay. Seven and a half minute hearing. So if you compare this hearing to the hearing in the prior case the immigration judge did substantially less in this case than he did in the prior case. He never explains to Mr. Vasquez Flores what the charges against him were. He never explained to him what relief he was eligible for. He never he never asked the follow-up questions that would have made it clear in the immigration court what what his ability to depart was separate from the question of his ability to pay the bond. Certainly due process requires that an alien has a right to to a fair hearing and part of that requirement of a right to a fair hearing is the ability to understand and be able to respond accurately. It's very different for difficult for an alien to respond or for anyone unversed in the process to be able to respond to these questions when they're not being given enough information to know what's really being asked. And I think the prime example of that is the question regarding can your girlfriend or your wife or someone pay can your girlfriend or anybody else pay for your ticket? And the immigration judge never asks them or never clarifies what the time frame for that is. It would be as if some the court were to ask me can you give me twenty dollars? Well if the answer if the question means today, no I can't. But if the question means tomorrow, probably. It's that the time frame matters and the details matter and these issues were never explained. So this has to be a part of any duty to to develop the record as we've set forth in the briefing. In addition, so for these reasons we Mr. Vesca's floors has showed sufficiently that he was prejudiced by the immigration judge's errors in this case. I see that my time is up. Are there any further questions? No thank you. Thank you. Good morning. Jean Hudson for the United States. Good morning counsel. Thank you. Good morning. This court should affirm the district court's decision which correctly found that Vesca's Flores could not establish prejudice under the fundamental unfairness test for related to 1326d. The district court got this right and the decision should be affirmed. In this case the immigration judge asked Mr. Vesca's Flores as counsel for as just described, asked Mr. Vesca's Flores if he could pay or if anyone could pay the $5,000 bond. Vesca's Flores asked if it could be less. The judge said it would not be less. He asked if anyone and his girlfriend or anyone else could pay for a ticket back to Honduras for him. Vesca's Flores said no and at the end of the hearing the immigration judge in response to a lower bail said it was not going to be lower. Vesca's Flores' own statements make clear that he understood exactly what was going on here. That he engaged the IJ with relevant questions about what the bond amount might be and and was in his own words unable to pay his way home. He had no means to depart. The IJ developed those facts necessary to make that decision and the IJ determined that Vesca's Flores could not pay the $5,000 bond and Vesca's Flores cannot meet his burden applicable to this case. Yes, let me ask you this. I want to make sure that do you agree that in discretionary decisions like voluntary departure that a person could be prejudiced by a decision or do you say that there's no prejudice in a discretionary decision? The alien has no constitutional interest in the voluntary departure. It's discretionary relief and therefore our position is that there can be no denial here that rises to a constitutional level if that is what the court is asking. No, my question was I just want to make sure that that you're not taking the position that in discretionary decisions that an alien can never show prejudice. That's not your argument is it? No, the alien however would have to show I think something that rendered the hearing something where he was meaningful opportunity to be heard. I think that would be what where the alien would have to get and Mr. Vesca's Flores cannot reach that burden here. Let me let me ask you you mentioned the what the because it's critical in terms of the discussion that went on during that seven and a half minutes. Did the at least I don't see it where the where the where the defendant was or the nature of the departure and how what the difference would be if he left voluntarily as opposed to involuntarily? In other words you know to be able to to at least articulate that if the reason I'm asking can you go back is because if you do this then this is what's happening if you can't then that happens. If one is standing before a judge and it doesn't seem to make a big difference whether or not you leave voluntarily or involuntarily then there seems not to be an incentive to do anything like pay your own ticket to go back or say I'm leaving there. Why wouldn't the judge explain that well you know because he could have had the money for all we know but he just said why should I spend money to go back if you're going to send me back? Wouldn't it be fundamental to at least understand the difference between a voluntary and an involuntary departure? I don't think that Mr. Vasquez-Flores can point to any regulation or any statute that requires the immigration judge to make those kinds of or to have that kind of discussion with the alien and let me let me let me let me now maybe not a statute you're right it's not a mandated duty by statute but we're talking about if we're looking at the prejudice prom we go back to United States versus Wilson here which talks about reasonable probability which then that case itself discussed the Fifth Circuit's case and the Fifth Circuit case it didn't just discuss it actually adopted the standard from the Fifth Circuit. The Fifth Circuit's case actually looked at the Strickland standard for there which you know your opposing counsel seem to point us more to the Ninth Circuit direction with plausibility but it's really the reasonable probability standard that we're looking at which I think is somewhat higher than plausibility. So how do you I mean when you when you're dealing with that outside the statutory requirement if you're dealing even from a due process perspective that you've got someone standing before you and you don't explain to them the different why you are asking them this are you able to to leave on your own or and and you know do you have enough money and then he inquires well you know can you reduce it now that statement in of itself seems to indicate he's got some money if he wants it reduced he probably has some resource because otherwise you wouldn't ask reduce and yet there's no inquiry on it from the from the judge and and then the other thing too is the judge never tells him that you know this bond money would be returned upon his proof of departure. I mean it's like you know I don't know what a bond is a bond is what when you get do you ever get it back if you get 5,000 you know if you know you can get 5,000 you might could get someone to give you 5,000 if you knew all right when he's on that plane you get your money back that's that's a different don't you think there's some need to at least explain that he took seven and a half minutes why did he take a few more minutes and just kind of explain this otherwise we're in these kind of cases and if we do it the way this judge did you just go in and ask the bare bone question says i'm not obligated to say a word to you on why i'm asking these questions uh uh okay send them home um i'm not sure uh exactly what the question is but if i can start well let me give you a question let me back back up because i did say a lot so i want to make sure you are sure the question i'm asking the question i'm asking is outside of a statutory obligation which you seem to point to why is that not a due process obligation to tell a a petitioner what you mean by uh a voluntary departure that unlike an order of removal you you've got a question here that you ought to explain to him why you're doing this why wouldn't you do that and why is it not critical for the ij to explain well as we set forth in our brief there is no due process right to discretionary relief and this court has held that there's no process right discretionary relief this court has held that even the erroneous denial of voluntary or of discretionary relief does not trigger due process protections and therefore there is no due process um concern in the circumstances the court has set forth so then your answer to judge floor's question is yes you cannot have discretion there uh if you've got discretionary relief you can't have a constitutional right that your answer is yes right because you just answered and said no you didn't mean that but seems like to me you're telling me because it's discretionary therefore you can't have due process rights violated yet there is no due process uh right triggered here as we said in our brief the ij does not have a constitutional obligation um uh to develop the record in this case is our position there is no due process triggered by a duty to develop the record in this case so if i've said something that was contrary to that before uh well i just want to make sure i think when you're talking constitution of a discretionary right is different than a right to a fair hearing which really is fundamentally due process right so i mean i'm not trying to argue over you but i want to make sure you explain yourself clearly no need me to hear you incorrectly and go back and decide a case without giving you a chance to explain what you mean so you know take your time and you know if if if you know there's something you kind of want to clarify to me go ahead and do that well i think maybe i'll start with our position that the immigration judge regarding any duty to develop the record the immigration judge has certainly broad statutory and authority to develop the record but there is no statute or regulation that the government is aware of that would um impose any obligation on the ij to develop the record in a voluntary removal here um to the extent that there is any duty to develop the record where the alien is unrepresented it is not in the government's view a constitutional duty and in this particular case to the extent that there is any duty that the court might turn uh find the ij did fulfill that duty um the judge had before it two questions to answer one was whether or not vesquez flores had the means to depart and the second was whether the court would uh whether he could pay for any bond that the court had the discretion to impose under the regulation governing these proceedings the court so so that you know where kind of where i'm going and i accept what you're saying and where you're going with this but i want to be clear because other circuits have addressed this difference this difference between a discretionary right is different than a right to a fair hearing uh where such relief is being explained in other words you get a you're entitled to a fair hearing where the relief and what you are doing is being explained to you and here what i'm honing in on is you've got a judge asking about voluntary departure without any context of explaining what that means to him other than you just can't leave voluntarily you don't have the money okay you got and if that's the you know because you don't have a duty from your perspective statutory duty but i'm not talking about discretionary duty i'm talking about the fair hearing for what you're entitled to or to have the relief to be explained you see where i'm going with that and if you you know if you take it from there well i think in this context and mr vaska's floor is in order to prevail would have to show prejudice um which he can't show here and i think i think the crux of this case in terms of the facts that were developed at the immigration hearing were that once the judge decided in his discretion to set that five thousand dollar bond and once it was clear that vasquez flores couldn't pay that bond there it was clear that that it was going nowhere um there were two lines of inquiry the judge did ask about his uh means to depart that's that's where that's that's the question i'm asking it is clear at that point he can't pay it but he doesn't know the context of it it's a five thousand dollar bond it's one thing to get five thousand give it to someone and never see it again it's another thing if you say well let me explain to you five thousand i don't know where you get it from but if but upon the time you leave the five thousand dollars are given back wouldn't that be don't you think i mean doesn't that sound like something somebody ought to know if they want to say no i don't have the because he wants a reduced bond i don't know what about that was it could have been almost nothing could have been close could have been four thousand i don't know but he had this he's in this situation if he understands the criticality of voluntary versus involuntary departure that question is wouldn't it be fair to explain that to him and not explaining it creates a prejudice to him because he can't go i don't think vasquez flores has established prejudice here it was his burden in this context at the hearing to establish by clear and convincing evidence and he hasn't done that mr vasquez flores had the opportunity he was given notice and an opportunity a meaningful opportunity to be heard the ij was under no obligation to act as an advocate for vasquez flores in this case and as the district court found the evidence was not clear and in fact the majority of the evidence was that he had no maintenance um so what is what is this 60 days that you can get to to fly is there such a thing as that uh uh in a hearing of this sort would he have when you say can you fly home does he have to fly home tomorrow does he does it is there a provision that allow him some time period in which to do it um i believe there is something in the regulation uh your honor i'm not um finding it right off the bat but there may there may be a period of time uh i think there's a limit on the period of time that the alien has to depart but i'm not sure it's in the um uh post-conclusion voluntary so judge judge didn't tell him about that i think that limit of 60 days didn't tell him about that didn't mention that he could be held in detention during this time i'm you know i'm just trying to understand you know as we do these things we all want to get through our cases just like this argument we want to move through it move on i mean that's just the nature of what we do but you know it takes a little patience take a little time to develop it and i don't i don't know if we want to create a culture with the iaj ij from a case like this to say you just have to go in and answer these little this this here is going to take you 10 minutes because this guy here he's not going to be able to answer these questions he doesn't have the money he can't pay his own ticket back boom gone without explaining anything else that doesn't sound fair but i'm sorry judge go ahead please no no i was just going to ask you you talked about he had notice and an opportunity to be heard what did the notice what i didn't say what did was he told in the notice uh i think the notice simply told him to appear before the immigration court on a certain date and he didn't know why um i don't know what he knew but it was just a standard notice okay i apologize he wasn't told why i think it i think it certainly said for purposes of a hearing before the um i think what what this is what i'm getting at i think judge win has made a really pretty persuasive to me case but the way i read this record of the hearing it didn't seem to me that he didn't know what a bond was for or what the consequences would be or any of that so that's why i was wondering was he told in some notice and you brought up the notice idea well um the notice says that the department of homeland security has alleged that you are not a citizen citizen or national of the united states you're a native of honduras and a citizen of honduras you were robbed in the united states at or near unknown on a unknown date and you were not then admitted or paroled after inspection by an immigration officer and then it says on the basis of the foregoing it is charged that you were subject to removal from the united states pursuant to the following provisions of law um and it cites to the 212c provisions and then it says that he is to appear on a date to be set at a time to be set and so forth um that's at ja 52 so it doesn't tell him anything about bond or what means necessary or any of that is that right well then there's a um second page that instructs him that he if he chooses he can be represented that at the time of the hearing he should bring any affidavits or other documents which he desires to be considered in connection with his case and at the app at the hearing he would be given the opportunity to do admit or deny any of the allegations in the notice of appear to appear um and that you are inadmissible or removable on the charges contained in the notice of appear notice to appear and then at the conclusion he would have a right to appeal an adverse decision by the immigration judge and would be advised um by the immigration judge of any relief from removal for which you may appear eligible during uh sorry including the privilege of departure voluntarily so he is told at least that there are these two things he's not told what consequences are right between departure as well right and he's given an opportunity to have counsel and again the the the judge's decision in this context of of um discretionary relief voluntary departure um is looking at the regulation in uh governing these proceedings and has the or not Vasquez Flores can uh has the means to depart which is required for post-conclusion voluntary departure and then in the court's discretion of course he can set a bond and the court did that so in our view there wasn't anything further left to develop in the record once the court determined that Vasquez Flores could not meet those two conditions there was nothing else to determine now whether or not Vasquez Flores had x amount of dollars or could access certain amount of dollars within a might have been something somebody wanted to know under some other circumstance but here where the court had established the two things that were relevant under the statute um and were in fact the decisions this IJ had to make once that once those facts were um were developed there was no need to go any further so for us it's Vasquez Flores's own words and in fact in the context where Vasquez Flores clearly understood what was going on in response to Judge Wynn's fairness concern where he's asked for a lower bail he understands the court is setting a bail and has asked the judge to consider setting something less the judge explicitly declined to do so and again our view is that this hearing sorry the issue wasn't going any further than and Vasquez Flores cannot show that on appeal the result would have been any different see I think your time has expired thank you very much for your argument do we have any rebuttal yes your honor um so just briefly first of all the notice that the government was describing it j52 and 53 is in english mr Vasquez Flores speak spanish there's no indication that that notice was ever actually translated for him into spanish at the bottom of it it's how is the hearing conducted in what language it was conducted with an interpreter was it does seem that he understands why he's there he may not understand the difference between voluntary departure and being removed but it does seem to understand I thought the government's last argument was look what you've been trying to say is that there is a reasonable possibility that things would have been different if he come up with some if they have probed if there was some amount of money he could come up with but the ij did say i'm not changing anything so it looks like maybe that's maybe that's not um reasonable but it does it does sort of close the door on a reasonable possibility of a change it doesn't close it doesn't close the door on a reasonable possibility of a change on appeal however and that's why the due process violation here is he is prejudiced by he's denied the opportunity to appeal had he been able to appeal he could have he the the bia would have looked at the ij's decision and would have found numerous problems with it okay so what is the due process violation the due process violation and the violation that we have argued and that the government has conceded in their response brief is the denial of his right to appeal now we've been we've been discussing just that's too broad for me what denied him his rights to appeal the immigration judge never i mean he's here right the immigration judge never advised him of his right to appeal uh the immigration judge circled on the written memorandum of his of his order um memorializing the oral decision but never in the seven and a half minute uh immigration hearing was he ever advised regarding his right to appeal asked if he wanted to appeal or provided any opportunity to file an appeal okay and so is that the only due process violation that's the due process violation we're relying on now we've been discussing the due process violation that comes from the immigration judge's failure to develop the record but you don't make that claim that's not your claim that that goes to prejudice in this case and and so for our purposes here although we believe that he has a due process right uh but regardless of whether it's a due process right to the development of the record or simply a right under regulation or statute or bia precedent the result is that had he been able to appeal but for the due process violation denying him the right to appeal the outcome would have been different because the case would have been remanded for further development of the record the bia would have looked at this and they would have said first of all um under matter of mas the immigration judge can't condition his grant of voluntary departure on his payment of any bond much less of a $5,000 bond at all there's no factual facts supporting why a $5,000 bond this is an appealable decision there's no indication on the record of how the immigration judge came up with that amount or whether he evaluated any of the factors that immigration judges typically consider regarding that and third of all there's no indication that the immigration judge did what he was required to do under binding bia precedent which is to explain to Mr. Vasquez Flores what voluntary departure is and and provide him the opportunity to apply for it i think it's telling in this case the government refers to how these are the b the inquiries but he made them in in a way that that put its finger on the scales of the of the inquiry regarding the the the voluntary departure because properly speaking he should have asked first he should have explained to him about voluntary departure and then said do you have the means to depart voluntarily and inquired about how that works and whether he has the means to depart voluntarily and then he should have inquired about the bond the the departure bond only applies if you're considering someone for voluntary departure here he said you have to pay $5,000 also can you depart voluntarily so the way in which these questions were asked really prejudiced Mr. Mr. Vasquez Flores's ability to respond accurately regarding the ability to depart voluntarily i see my time is up yes we appreciate your argument thank you very much thank you
judges: Diana Gribbon Motz, James A. Wynn Jr., Henry F. Floyd